# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LORENZO GARRETT (#M-20194), ) | |
| ) | |
| Plaintiff, ) | Case No. 16 CV 1062 |
| ) | |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ROBERT NEEDLEMAN and ) | |
| PAUL PERAINO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorenzo Garrett, an Illinois state prisoner, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants, two Chicago police officers, violated his constitutional rights by illegally stopping him, using unjustified force, and then denying him access to medical care for his injuries. Before the Court is defendants' motion for summary judgment [38]. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

On the evening of July 24, 2015, Officers Needleman and Peraino were on a "gang suppression mission" dressed in full Chicago Police Department uniforms and driving a marked patrol car. (Defs.' SOMF ¶ 1.) During their surveillance, defendants noticed a vehicle whose driver was not wearing a seat belt. (*Id.* ¶ 2.) Defendants signaled the car to pull over and Officer Peraino approached the driver's side of the vehicle, while Officer Needleman approached the passenger side. (*Id.* ¶¶ 3-4.) Plaintiff was a passenger in the vehicle. (*Id.* ¶ 3.) When the driver could not produce a valid driver's license, defendants ordered plaintiff and the driver out of the vehicle. (*Id.* ¶¶ 5-7.) When Officer Needleman attempted to perform a protective pat down of plaintiff, he pushed Needleman away with his shoulder, rammed the officer with his head, and

then tried to pull away.  (*Id.* ¶¶ 8-9.)  The officers then performed an "emergency take down." (*Id.* ¶ 10.)  Plaintiff continued to resist the officers as he lay on the ground by trying to pull away, flailing his arms, biting Officer Peraino on his wrist, and scratching Officer Needleman on the back of his neck.  (*Id.* ¶14.)  During the fracas, a sergeant and backup officers arrived.  (*Id.* ¶ 15.)  Law enforcement officers used no further force once plaintiff was finally under control. (*Id.* ¶ 16.)  At some point during the encounter, the officers discovered that plaintiff was armed with a loaded black nine-millimeter semi-automatic handgun.  (*Id.* ¶¶ 11-12.)  Plaintiff claimed ownership of the gun; however, the gun was not registered, and plaintiff was not carrying a Firearm Owners Identification ("FOID") card.  (*Id.* ¶ 13.)

A dashboard camera mounted in the squad car recorded the traffic stop and plaintiff's ensuing struggle with the officers.  (*See* DVD accompanying Defs.' Mot. Summ. J. time-stamped July 24, 2015.)  The video footage supports defendants' representations. According to the video, just as Officer Needleman started to pat down plaintiff, the latter bucked the officer and began swinging his arms.  (*Id.* at 6:49:06 p.m.)  Seeing the other two wrestle, defendant Peraino immediately ran over to assist Needleman.  (*Id.*)  Other officers arrived on the scene not long after and joined the fray.  (*Id.*)  Plaintiff was down on the ground and in handcuffs by 6:50:52 p.m., whereupon most of the officers walked away.[1]  (*Id.*)  At 6:51:22 p.m., several officers escorted plaintiff, with his hands behind his back, out of camera range and presumably into the squad car.  (*Id.*)  Plaintiff did not appear to be injured, in pain, or even particularly disheveled.  (*Id.*)  The entire incident, from the traffic stop to plaintiff's detention, transpired in under four minutes.

---

[1] The Court is unable to distinguish Peraino and Needleman from their fellow officers in the video after the point at which the crowd assembled.

2

Officers booked plaintiff at an area precinct and immediately thereafter transported him to Rush University Medical Center because he claimed injuries stemming from the arrest. (Defs.' SOMF ¶ 17.) Plaintiff arrived at the hospital[2] at 7:15 p.m., less than a half hour after he was arrested. (*Id.*) Health care providers took four x-rays of plaintiff's left shoulder. (*Id.* ¶ 19.) The doctor who reviewed and interpreted the x-ray images found that plaintiff's left shoulder was not broken, fractured, or dislocated. (*Id.* ¶¶ 20-21.) Hospital employees also performed a CT scan of plaintiff's skull. (*Id.* ¶ 22.) A second doctor determined that there was no orbital fracture. (*Id.* ¶¶ 23-24.) The doctor noted that plaintiff's "orbit" (his eyes and the supporting structure) were within "normal limits." (*Id.* ¶ 25.) The anterior cranial fossa was intact, and no intracranial abnormality was visible. (*Id.* ¶ 26.) A third doctor performed an eye exam and found nothing amiss. (*Id.* ¶¶ 27-29.)

Plaintiff was initially charged with six counts of aggravated unlawful use of a weapon, one count of unlawful use or possession of a weapon by a felon, and six counts of aggravated battery to a peace officer. (*Id.* ¶ 31.) He ultimately pleaded guilty to two counts of aggravated battery to a peace officer, as well as one count of aggravated unlawful use of a weapon. (*Id.* ¶ 32.) As part of the plea colloquy, plaintiff stipulated that he had exited the vehicle, made a quick movement, and pulled away when Officer Needleman attempted to perform a protective pat down. (*Id.* ¶ 33.) He further conceded that he had scratched Needleman's neck and bitten Peraino on his wrist. (*Id.* ¶ 34.) He additionally admitted that he had drawn a handgun from his waistband, that the weapon was a nine-millimeter semi-automatic pistol loaded with seven live rounds, and that he did not

---

[2] Defendant Peraino also received treatment at Rush Hospital because he sustained injuries to both knees and his left ankle, in addition to the bite marks on his wrist. (Defs.' SOMF ¶ 18.)

have a valid FOID card. (*Id.*) The trial judge sentenced plaintiff to fifteen years in the Illinois Department of Corrections. (*Id.* ¶ 36.)

## STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "'come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question[.]'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

Local Rule 56.1 supplements Federal Rule of Civil Procedure 56; its purpose "is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue[.]" *Cracco v. Vitran Express., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Each paragraph of the

4

statement must contain specific references to supporting materials in the record that are relied upon to support the facts set forth in that paragraph. *See* N.D. Ill. L.R. 56.1(a). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco,* 559 F.3d at 632 (quoting N.D. Ill. L.R. 56.1(b)(3)(B)). Rule 56.1(b)(3)(C) requires the non-moving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008). "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka*, 686 F.3d at 398. "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria*, 735 F.3d 505, 513 (7th Cir. 2013). District courts may rigorously enforce compliance with Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

## DISCUSSION

Consistent with the Local Rules, defendants filed a statement of material facts along with their motion for summary judgment. Each substantive assertion of fact in defendants' Local Rule 56.1(a)(3) Statement is supported by evidentiary material in the record. Also in accordance with

the Local Rules, defendants filed and served on plaintiff a Local Rule 56.2 Notice [50], which explains in detail the requirements of Local Rule 56.1.

Plaintiff did not to respond to defendants' statement of facts, submit his own statement of additional facts, or provide a list of disputed facts that require a trial to resolve. Instead, plaintiff's five-paragraph response [54] to the motion for summary judgment merely asserts: "[T]he photos and medical reports show that [plaintiff']s rights were violated by the use of excessive force and force that was used to cause injury in excess of normal submission maneuvers, inflicting permanent bodily harm. Defendants struck plaintiff with closed fists, causing facial injuries." (Pl.'s Reply at 1.) Plaintiff goes on to ask, rhetorically, "If there were no injuries, then why the seven to ten day follow-up [to his medical examination following his arrest]?" (*Id.*) Because plaintiff has failed to controvert defendants' facts with any admissible evidence, the Court deems those facts admitted for summary judgment purposes. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Accordingly, the above facts, all supported by the record, are undisputed for purposes of the summary judgment motion.

As explained in detail below, plaintiff has failed to show that there is a genuine dispute as to any outcome-determinative facts, and defendants have established that they are entitled to judgment as a matter of law. The video evidence shows that defendants pulled over the car in which plaintiff was a passenger, not that the car was parked, as claimed in the complaint. Additionally, plaintiff's guilty plea bars him from pursuing the excessive force claim he advances because he alleges facts inconsistent with his related convictions. Regardless, the video substantiates defendants' account of events and refutes the allegations in the complaint.

6

Furthermore, the unrefuted evidence demonstrates that defendants did not unreasonably deny or delay needed medical care after plaintiff was arrested. Accordingly, the Court grants defendants' motion for summary judgment in its entirety.

**Traffic Stop**

Plaintiff has failed to establish that there is a triable issue concerning the propriety of the challenged traffic stop. The Fourth Amendment prohibits unreasonable searches and seizures. For a traffic stop to survive constitutional scrutiny, police officers must have probable cause to believe that the driver committed a traffic violation. *Tapley v. Chambers*, 840 F.3d 370, 377 (7th Cir. 2016) (noting that an officer's subjective motives are irrelevant in determining whether the traffic stop was valid). "The Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law." *Id.* (quoting *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014)).

Defendants assert, without contradiction, that they "curbed" the vehicle in which plaintiff was a passenger because the driver was not wearing a seatbelt. Plaintiff does not mention the traffic stop in his response. Although plaintiff alleged in his complaint that the car was parked at the time of the police encounter, it is well-settled that a party may not rest on the pleadings at the summary judgment stage in response to a properly-supported motion. *See, e.g., Crockwell v. Dart*, No. 15 CV 825, 2016 WL 4493456, at *5 n.11 (N.D. Ill. Aug. 26, 2016); *Roberts v. Bailey*, No. 13 CV 5245, 2015 WL 5332237, at *3 (N.D. Ill. Sept. 14, 2015); *Momient v. Nw. Collectors, Inc.*, No. 13 CV 2140, 2014 WL 6820892, at *2 (N.D. Ill. Dec. 3, 2014). In light of defendants' undisputed evidence that plaintiff's friend was driving[3] unbuckled, there is no question for a jury

---

[3] Moreover, defendants' video footage conclusively establishes the falsity of plaintiff's contention that the car was parked at the time of the officers' approach. (*See* Defs.' DVD at 6:48 p.m.) The video shows the

to decide. Defendants are entitled to summary judgment on plaintiff's claim that defendants lacked probable cause to conduct the traffic stop.

**Excessive Force**

In light of plaintiff's convictions for aggravated assault of a peace officer and aggravated unlawful use of a weapon, he cannot assert that defendants attacked him without provocation. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Viramontes v. City of Chi.*, 840 F.3d 423, 426 (7th Cir. 2016). Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490. "It is irrelevant [whether a prisoner plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). "To properly apply *Heck*'s bar against certain damages actions, a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (quoting *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006)).

Here, a finding that defendants engaged in excessive force against plaintiff would necessarily call into question the validity of his convictions. Police may, of course, use only "reasonable" force in effecting an arrest. *See, e.g., Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519-20 (7th Cir. 2012). But here, plaintiff's

---

officers following the car until the driver pulled over. (*Id.*)

excessive force claim is irreconcilable with his criminal convictions. The factual allegations in plaintiff's complaint are at odds with the factual basis for his convictions.

A conviction for assault or battery of a peace officer does not necessarily bar a § 1983 claim of excessive force stemming from the same incident, "so long as the § 1983 case does not undermine the validity of the criminal conviction." *Hardrick*, 522 F.3d at 762. "A contention that a guard struck back after being hit is compatible with *Heck*. Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong." *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008). "An argument along the lines of 'The guards violated my rights by injuring me, whether or not I struck first' does not present the sort of inconsistency" that warrants application of the *Heck* doctrine. *Id.* at 902; *see also Hemphill v. Hopkins*, Nos. 08 C 157 & 08 C 902, 2011 WL 6155967, at *2 (N.D. Ill. Dec. 12, 2011) ("*Heck* does not bar an excessive force claim if the plaintiff, putting aside any challenge to his conviction, proceeds on the theory that the degree of force applied was unreasonable"); *Gilbert*, 512 F.3d at 901 ("*Heck* and *Edwards* do not affect litigation about what happens after the crime is completed. Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but *whether* the force was reasonable is a question that may be litigated without transgressing *Heck* or *Edwards*.") (emphasis in original); *Elcock v. Whitecotton*, 434 F. App'x 541, 542-43 (7th Cir. 2011) ("[A] claim of excessive force . . . will not undermine a finding that the plaintiff attacked or wrongly resisted a police officer or prison guard.").

In *Hardrick*, the plaintiff was allowed to proceed on his § 1983 claim that police officers used excessive force after the plaintiff had been subdued and was in custody. 522 F.3d at 762-63;

*see also Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (a § 1983 plaintiff could proceed with a claim that "police beat him severely even after reducing him to custody"). Likewise, in *Brengettcy v. Horton*, after having been convicted of battery of a peace officer, the plaintiff filed a civil rights action claiming excessive force alleging that the officer used unnecessary and unreasonable force against him after he struck the officer. 423 F.3d 674, 677-78 (7th Cir. 2005). Success on such a claim in that case "d[id] not undermine [the plaintiff]'s conviction or punishment for his own acts of aggravated battery." *Id.* at 683 (citing *Wilkinson v. Dotson*, 544 U.S. 74 (2005)).

Where the facts alleged by a § 1983 plaintiff contradict or necessarily imply the invalidity of his conviction, however, *Heck* bars the claim. *Moore v. Mahone*, 652 F.3d 722, 723-24 (7th Cir. 2011). In *Moore*, a prisoner with a battery conviction could not proceed with his § 1983 claim that a correctional officer used excessive force against him; the prisoner asserted that he had committed no battery on the guard to justify any use of force in response. *Id.* at 724-25. That plaintiff could have argued that officers overreacted to his battery, which might not necessarily have implied the invalidity of his battery conviction. But because the plaintiff asserted and persisted with his claim that he had committed no battery at all to justify any use of force, his claim was barred by *Heck*. *Id.*

It is possible for a plaintiff to remain "agnostic" about the facts supporting his criminal conviction. *See Gilbert*, 512 F.3d at 901-02. But "a plaintiff is master of his claim and can, if he insists, stick to a position that forecloses relief." *Evans*, 603 F.3d at 364 (citing *Okoro*, 324 F.3d at 488). In this case, plaintiff insists that he was "willingly compl[ying]" with defendant Needleman's orders when the officer "[s]uddenly and without warning . . . pushed [plaintiff] to the

ground" and then struck him in the face several times." (Compl. ¶¶ 4, 7.) Regardless of whether plaintiff expressly challenges his convictions, he cannot disavow their factual underpinning without calling into question their validity. *Viramontes*, 840 F.3d at 428. Plaintiff's position that he was in full compliance with defendants' directives, and that they attacked him without any justification for doing so, requires dismissal of his excessive force claim pursuant to *Heck*.

This case presents a scenario very similar to *Tolliver v. City of Chicago*. Therein, the plaintiff, in pleading guilty to aggravated battery to a peace officer, stipulated that the evidence would establish that he had driven his vehicle towards an officer who, in fear for his safety, fired his service weapon at the vehicle. 820 F.3d 237, 241 (7th Cir. 2016). In the plaintiff's subsequent civil rights action, he maintained that he was paralyzed except for his "eyeballs" at the time, and was therefore unable to intentionally drive the car, which merely rolled in the officer's general direction. *Id.* at 240, 243. The Court of Appeals affirmed summary judgment in favor of the officer, finding that the plaintiff's version of events was *Heck*-barred for alleging facts inconsistent with his conviction for aggravated battery of a peace officer. *Id.* at 243-45. The Court of Appeals found that "if the incident unfolded as Tolliver alleges in his civil suit, then he could not have been guilty of aggravated battery of a peace officer because the officer shot him without provocation and was injured as a result of involuntary and unintentional actions by a paralyzed Tolliver." *Id.* at 244; *see also Saffold v. Vill. of Schaumburg*, No. 08 CV 5032, 2009 WL 2601318, at *3 (N.D. Ill. Aug. 24, 2009) (under *Heck*, plaintiff could not deny that he was guilty of telephone harassment unless or until the judgment on his guilty plea was vacated).

Defendants' unrefuted evidence reflects that plaintiff pleaded guilty to two counts of aggravated battery to a peace officer and one count of aggravated unlawful use of a weapon. As

part of the plea colloquy, plaintiff stipulated that he had exited the vehicle, made a quick movement, and pulled away when Needleman attempted to perform a protective pat down. He further conceded that he had scratched Needleman's neck and bitten Peraino on his wrist. Additionally, he admitted that he had drawn a loaded semi-automatic handgun from his waistband. Plaintiff does not contend that defendants resorted to excessive force after he pointed a gun at them or otherwise attempted to harm them; he does not argue that the officers overreacted to his aggressive actions; and he does not suggest that they engaged in force after he was already restrained. Instead, he maintains that the officers took him to the ground and assaulted him without any reason for doing so. Plaintiff's account contradicts the admissions he made at his plea hearing. If plaintiff's current version of the incident is true, these facts would necessarily imply that both of his convictions are invalid. *See Moore*, 652 F.3d at 725 (where a § 1983 plaintiff "implicitly . . . and in places explicitly, denies" the acts supporting the conviction, the § 1983 case is barred by *Heck*). Under the facts presented, the *Heck* doctrine bars plaintiff's excessive force claim. A finding that defendants resorted to force for no reason would necessarily impugn plaintiff's underlying convictions.

Even assuming that *Heck* does not bar plaintiff's excessive force claim, plaintiff has adduced no evidence in support of that claim. Defendants' video, which captured the majority of plaintiff's brief scuffle with the officers, contradicts the account set forth in plaintiff's complaint. It is well established that police officers may use a reasonable degree of force to gain compliance from a resisting suspect or one who fails to submit to the officers' authority. *Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011); *see also Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) ("An officer who has the right to arrest an individual also has the right to

use some degree of physical force or threat of force to effectuate the arrest[.]") (quoting *Stainback v. Dixon,* 569 F.3d 767, 772 (7th Cir. 2009)). That right is circumscribed by the Fourth Amendment's "reasonableness" standard. *Williams*, 809 F.3d at 944. "Factors relevant to the reasonableness inquiry include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

The video shows that officers responded to an altercation plaintiff initiated, and nothing in the video remotely hints at unreasonable force. After pulling over the vehicle in which plaintiff was a passenger, defendants approached each side of the car. After the driver and plaintiff exited the vehicle, plaintiff abruptly head-butted Needleman when the officer began to attempt patting him down. Seeing the other two tussle, defendant Peraino immediately ran to assist Needleman. Other officers arrived on the scene and joined the fray as bystanders gathered to watch and (in some cases) record the incident. Defendants had plaintiff on the ground and in handcuffs less than three minutes after the stop. A minute later, several officers calmly walked plaintiff out of view, presumably to the squad car.

The Court is satisfied that no reasonable jury could view the dashcam footage and believe plaintiff's version of the events. The Supreme Court has held that where video evidence contradicts a plaintiff's account, the court should not accept the plaintiff's story for purposes of summary judgment. *Scott v. Harris,* 550 U.S. 372, 378-80 (2007); *see also Williams,* 809 F.3d at 942 ("When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape."); *Bogie v. Rosenberg,* 705 F.3d 603, 610-12 (7th Cir. 2013) (dismissal of complaint

was appropriate where video exhibit attached to complaint contradicted the allegations in the complaint). The video footage leaves no doubt that defendants responded reasonably in a charged situation in which an armed suspect was attempting to resist, and at the very least break away from, a law enforcement officer.

While a few moments of the disturbance take place partly outside the frame of the video, those brief lapses are insufficient for plaintiff to avoid summary judgment. Even when a video recording of an interaction fails to capture "every second of every aspect" of the encounter, the video may be sufficient to reject a plaintiff's claim where the video in question is "fairly comprehensive" and refutes the claim. *Gillis v. Pollard*, 554 F. App'x 502, 505-06 (7th Cir. 2014) (citing *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004) (video recording of the inmate did "not suggest that he was experiencing the level of discomfort that one would expect if the officers were applying substantial upward pressure to [his] groin")).

The camera was able to record most of the short-lived struggle. No gratuitous blows appear to have been inflicted, and no one is seen kicking plaintiff, as alleged in the complaint, or punching him, as he asserts in his brief opposing summary judgment. Plaintiff does not suggest that the video was altered, nor does he contend that a rational jury could interpret the video as depicting unlawful force. The officers had plaintiff under control in under two minutes and led him away not long after. Irrespective of the fact that the Court is unable to view every second of the skirmish, insufficient time elapsed for the officers to engage in the attack plaintiff describes in his complaint. The very brief duration of the struggle, the presence of many onlookers—both law enforcement officers and bystanders with cameras, defendants' calm and measured response while in the camera frame, and plaintiff's complete lack of apparent distress when he walked away with

officers following his arrest, all preclude a finding that defendants engaged in unnecessary force. Accordingly, there is no triable dispute with respect to defendants' use of force.

**Medical Care**

The evidence does not support an inference that defendants ignored any urgent medical need. The Fourth Amendment prohibits police officers from unreasonably withholding or delaying access to medical attention for an arrestee's medical needs. *See Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011). The Court analyzes such a claim under the Fourth Amendment's "objective reasonableness" standard. *Sallenger v. City of Springfield*, 630 F.3d 499, 503 (7th Cir. 2010). Whether officers acted reasonably is determined by four factors: (1) the seriousness of the arrestee's medical needs; (2) whether the officer noticed the arrestee's need for medical treatment; (3) the scope of any requested treatment; and (4) police interests. *Ortiz*, 656 F.3d at 530 (citing *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)). The severity of the medical condition under this standard need not be objectively serious. *Id.* at 531. Rather, "the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with . . . the scope of the requested treatment." *Id.* In cases of delay, "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Plaintiff has shown neither significant injury nor unreasonable delay. The video footage shows plaintiff walking with officers following his arrest. He had no visible injuries, and did not grimace in pain or otherwise show distress. Plaintiff was arrested at about 6:51 p.m. Immediately following his processing at an area police headquarters, he was taken to Rush University Medical Center for evaluation and treatment. Police officers transported plaintiff to

Rush at 7:15 p.m.—less than a half hour after he was placed under arrest. X-rays and CT scans revealed no broken or fractured bones. The doctor who conducted an ocular examination similarly found no issues with respect to plaintiff's vision.

Plaintiff's empty assertion that "photos and medical reports" will buttress his claim is not enough to defeat defendants' properly-supported motion for summary judgment. "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1077 (7th Cir. 2016) (quoting *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010)). Furthermore, Rule 56.1 requires a party opposing summary judgment to "respon[d] to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, *specific references to the affidavits, parts of the record, and other supporting materials relied upon*[.]" L.R. 56.1(b)(3)(B) (emphasis added); *see also Cracco*, 559 F.3d at 632 ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.") (citations omitted). Defendants filed their motion for summary judgment in November 2016. Plaintiff had ample opportunity to assemble and produce any photos, medical records, or other evidence in his possession concerning his claimed injuries. Instead, plaintiff submitted a perfunctory, non-substantive response to the motion. In the absence of any documentation demonstrating that plaintiff had any injury at all, let alone a medical need of constitutional magnitude, defendants are entitled to judgment as a matter of law on this claim.

## CONCLUSION

For the foregoing reasons, the Court finds that no material facts are in dispute and defendants are entitled to judgment as a matter of law. Even viewing the record in the light most

favorable to plaintiff, no reasonable trier of fact could find that defendants illegally stopped plaintiff, used unjustified force against him, or purposely denied or delayed access to needed medical attention. Accordingly, defendants' motion for summary judgment [38] is granted. The Court directs the Clerk to enter final judgment. Plaintiff's renewed request for representation [60] is denied as moot.

If plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, the Court of Appeals could assess a "strike" under 28 U.S.C. § 1915(g). When a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If plaintiff seeks leave to proceed *in forma pauperis* ("IFP") on appeal, he must file a motion for leave to proceed IFP in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Plaintiff must file any Rule 59(e) motion within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The Court cannot extend the time to file a motion pursuant to Rule 59(e). *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Court rules upon the Rule 59(e) motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Plaintiff must file any Rule 60(b)

motion within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must file the motion no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The Court cannot extend the time to file a Rule 60(b) motion. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Court rules on the Rule 60(b) motion only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

**SO ORDERED.**  **ENTERED: July 12, 2017**

**JORGE L. ALONSO**
**United States District Judge**